TODD W. BURNS
California State Bar No. 194937
Burns & Cohan, Attorneys at Law
501 West Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 236-0244
todd@burnsandcohan.com

Attorneys for Plaintiffs in three related cases:
(1) *R.C. v. United States, et al.*, No. 4:23-cv-03716-YGR;
(2) *J.R. v. United States, et al.*, No. 4:23-cv-03994-YGR; and
(3) *M.J.R. v. United States, et al.*, No. 4:23-cv-05821-YGR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| M.R.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>FCI DUBLIN, *et al.*,<br><br>　　　　Defendants. | Case No. 4:22-cv-5137-YGR<br><br>OBJECTION OF PLAINTIFFS IN THREE RELATED CASES TO THE DEFENDANT'S PROPOSED ORDER REQUIRING PLAINTIFFS TO SUBMIT TO PRE-DISCOVERY PSYCHOLOGICAL EXAMINATIONS<br><br>Date: December 18, 2023<br>Time: 10:00 a.m. |

**INTRODUCTION**

This briefing is filed on behalf of three Plaintiffs in cases that have been related to the above-captioned case. Those three cases are: (1) *R.C. v. United States, et al.*, No. 4:23-cv-03716-YGR; (2) *J.R. v. United States, et al.*, No. 4:23-cv-03994-YGR; and (3) *M.J.R. v. United States, et al.*, No. 4:23-cv-05821-YGR. As a shorthand below, those Plaintiffs are referred to as "the three Plaintiffs."

In this briefing, the three Plaintiffs explain their objection to Defendant United States's "proposed order regarding psychological evaluations," filed on December 15, 2023. *See* Docket #123. Counsel for the three Plaintiffs anticipates that some of the

other Plaintiffs in the related cases will join in this objection, either in writing or at the December 18, 2023, further case management conference.  However, given the time-frame involved (explained further below), and undersigned counsel's other commitments, it was necessary to file this briefing without circulating it and seeking joinder by those Plaintiffs' counsel.

Before turning to addressing the three Plaintiffs' reasons for objecting to the proposed order submitted by Defendant United States (hereafter, "Defendant"), a summary of the relevant background is provided.

## RELEVANT BACKGROUND

### I.   Introduction

This summary of the relevant background covers events leading up to the Defendant's submission of its proposed order on December 15, 2023, then discusses that proposed order.  Before turning to those subjects, however, there are some preliminary points that bear making.

The background addressed below discusses events surrounding (a) the parties' joint case management statement (CMS) filed on December 4, 2023 (docket #111), and (b) efforts to arrive at a joint proposed order with respect to mental health professionals having access to Plaintiffs who are in the custody of the Bureau of Prisons (BOP).  Counsel for the Defendant in some of the related cases, AUSA Brodie Butland, and counsel for some of the plaintiffs (including the above-captioned case), Jessica Pride, discussed the joint CMS and the proposed order.  Undersigned counsel, Todd Burns, was not involved in those discussions, thus he has no first-hand knowledge of them, and very limited second-hand knowledge.

Furthermore, drafts of the joint CMS and the proposed order were provided to Plaintiffs counsel (or at least to Mr. Burns) with little time for discussion or comment.  Presumably that was due to the time it took Ms. Pride and Mr. Butland to work out those drafts.  At any rate, the resulting time-crunch when Plaintiffs' counsel reviewed and offered comments about those drafts may have led to missed communications or

misunderstandings, particularly, as explained further below, with respect to Mr. Butland's understanding of the objection to the proposed order explained herein.  Mr. Burns, along with other Plaintiffs' counsel, will endeavor to smooth out these processes in the future to try to obviate such problems.

## II.   Events Related To Drafting The Joint Case Management Statement (CMS) And Proposed Joint Order Relating To Mental-Health Professionals Having Access To In-Custody Plaintiffs

In orders filed in all of the related cases, the Court directed the parties to submit a joint case management statement (CMS).

Counsel for the Plaintiffs subsequently exchanged emails regarding that statement.  In one of those emails, an attorney suggested including language in the joint CMS requesting that the Court issue an order requiring the BOP to allow Plaintiffs' mental health professionals access to in-custody Plaintiffs. Counsel for the three Plaintiffs, Mr. Burns, understood that proposed request to relate solely to Plaintiffs' mental health professionals, not the Defendant's.

Nonetheless, a draft of the joint CMS circulated by Ms. Pride (or her staff) to Plaintiffs' counsel on December 4, 2023, contained language with respect to Defendant's mental health professionals having access to in-custody Plaintiffs to conduct examinations.  After reviewing that draft joint CMS, counsel for the three Plaintiffs, Mr. Burns, emailed Ms. Pride, and all the other Plaintiffs' counsel, and explained that his clients would "not agree[] at this time to [being] examined by a government expert," and Mr. Burns therefore asked Ms. Pride (or her staff), "[w]ould you please make sure that the CMC statement reflects something to this effect?"

That same day, the joint CMS was filed.  Pages 8-10 of that filing contain significant discussion regarding access to in-custody Plaintiffs by mental health professionals, including those retained by the Defendant.  At the end of that discussion the joint CMS says, "The plaintiffs represented by Todd Burns from BURNS & COHAN, ATTORNEYS AT LAW do not agree to have Defendants perform any type of examination."  12/4/23 Joint Case Mgm't Stat. at 10 (Docket

3

#111).  This over-stated Mr. Burns's position because it excluded his statement that his clients would "not agree *at this time* to being examined by a government expert."

The Court asked Mr. Burns about this at the joint case management conference on December 11, 2023.  Although Mr. Burns does not have a transcript of that hearing, his recollection is that he represented to the Court that (a) his clients had not made any decisions about using mental health professionals or experts, but (b) he understood that if they sought to use such an expert (*i.e.*, if he noticed such an expert during the discovery process), reciprocal discovery obligations would require permitting a defense expert to examine that Plaintiff.

Later in the hearing, the Court said the parties should submit a "proposed order on psychological evaluations . . . by December 15, 2023."  Docket #120.

On December 14, 2023, Ms. Pride circulated to Plaintiffs' counsel a proposed order relating to mental health professionals having access to in-custody Plaintiffs. Ms. Pride and Mr. Butland evidently discussed and drafted that proposed order.  Mr. Burns, was not part of those discussions.  When he received the proposed order, Mr. Burns promptly reviewed it and emailed Ms. Pride, and all Plaintiffs' counsel, to raise several concerns about agreeing, at this stage, to an order allowing defense mental health professionals access to in-custody Plaintiffs.  Several other Plaintiffs' counsel responded with emails agreeing with that concern, and also raising other concerns. Various iterations of the proposed order were then emailed to Ms. Pride, which had changes that reflected those concerns, and explicitly dealt with undersigned counsel's objection to agreeing to an order giving defense experts access to in-custody Plaintiffs at this stage.  It was Mr. Burns's understanding that Ms. Pride then forwarded a draft of the proposed order to Mr. Butland that contained those changes.

On the morning of December 15, 2023, Ms. Pride circulated another version of the proposed order to Plaintiffs' counsel.  That proposed order didn't include the proposed changes that made clear that defense counsel would not be given access to in-custody Plaintiffs at this stage.  Mr. Burns and other Plaintiffs' counsel again

responded with emails raising their concerns.  The central sticking point raised in this regard was Plaintiffs' counsel's objection to an order that suggested they agreed to defense experts being given access to in-custody Plaintiffs at this stage.

There were additional emails from Ms. Pride about the proposed order later in the day, but the issue of defense expert access to in-custody Plaintiffs was not addressed.  Later in the day, another proposed order was circulated by Ms. Pride, but it contained the same problem, and there was no indication of what, if any, communications Ms. Pride and Mr. Butland had about that issue.  Again, Mr. Burns and several Plaintiffs' counsel sent emails reiterating their objections.

Ms. Pride subsequently determined that the parties were at an impasse on the proposed order and emailed Plaintiffs' counsel stating that she and Mr. Butland had decided to file separate proposed orders.  Mr. Burns replied with an email stating that (a) he believed the  parties should make a further effort to see if they could agree on a proposed order, and (b) he would like to submit briefing on the issue if Ms. Pride and Mr. Butland instead decided to file their proposed orders.

 Shortly thereafter, Ms. Pride filed her proposed order, which is at docket #122.

Shortly after that, Mr. Butland filed his proposed order, which is at docket #123.

The  three Plaintiffs now turn to discussing Mr. Butland's proposed order on behalf of the Defendant.

### III.   Mr. Butland's/The Defendant's Proposed Order

When Mr. Burns reviewed Mr. Butland's proposed order, he was surprised to see that it made no mention of what Mr. Burns understood to be the main sticking point – specifically, that he and several other Plaintiffs' counsel would not agree to a proposed order that granted defense experts access to in-custody Plaintiffs at this stage.

Instead, the brief memorandum accompanying Mr. Butland's proposed order described the central dispute among the parties as whether the Defendant may: (1) have their mental health professionals examine in-custody Plaintiffs now (at least in-custody Plaintiffs who first meet with a mental health professional retained by their counsel); and (2) later have their mental health professionals examine those same Plaintiffs again as part of the discovery process. But the central issue here, at least from the perspective of the three Plaintiffs (and evidently several other Plaintiffs), is that they oppose an order requiring them to submit to an examination by a defense expert at this stage. Mr. Burns doesn't know if Mr. Butland was made aware that this was, at least from Mr. Burns's perspective, the major sticking point, because Ms. Pride and Mr. Butland filed their proposed orders without having further discussions about the issue (as Mr. Burns suggested), which that necessitated filing this objection promptly in light of the impending further case management conference on December 18.

The three Plaintiffs now turn to addressing why they object to the Defendant's request that the Court enter an order compelling them to submit to pre-discovery – indeed, pre-answer – defense-expert examinations.

**THE THREE PLAINTIFFS OBJECT TO THE DEFENDANT'S REQUEST THAT THE COURT ORDER THEM TO SUBMIT TO PRE-DISCOVERY PSYCHOLOGICAL EXAMINATIONS**

## I. Introduction

Before explaining the reasons the three Plaintiffs object to the Defendant's request that the Court order them to submit to pre-discovery psychological examinations, there are some practical points that bear making.

## II. Practical Concerns Underlying The Three Plaintiffs' Objection

There are weighty practical concerns underlying the three Plaintiffs' objection, which Mr. Burns explained to the attorneys defending the government in the three Plaintiffs' cases, AUSAs Erin Hoar and Kristen Vogel. Those concerns are summarized here.

Many of the Plaintiffs in the related cases have a significant history of sexual abuse and trauma, in addition to the sexual abuse and trauma that underlies their complaints in the related cases.

Some, likely many, are reluctant to discuss that trauma with anyone.  That includes mental health professionals who may be sent into a prison by Plaintiffs' counsel for an examination, or even someone sent into prison to provide counseling for therapeutic purposes (were that even possible).  There are many potential reasons for such reluctance, not least that a person may feel she has been successful in dealing with trauma by "building a wall around it," and she may therefore be wary of breaching that wall in an effort to process, and seek to heal, the trauma.  Attempting to convince a person with that mindset to meet with a mental health professional for an examination, or for therapy,  will in some instances be impossible, but at the very least will require thoughtful communication and building trust, and those things take time.

These dynamics are further complicated because some in-custody Plaintiffs are reluctant to do things that will make them feel especially vulnerable while they are incarcerated, including tearing scars off of traumatic wounds.

Particularly for Plaintiffs who have not had any counseling for their trauma, their initial interactions with a mental health professional will likely be hard, and require building trust.  And even under the best of circumstances, there is a substantial potential to set loose a torrent of strong mental, emotional, and even physical responses.

All of these circumstances need to be considered when any mental health professional goes to see a Plaintiff, particularly because the time available to meet with that Plaintiff is somewhat limited.  Among those considerations is the strong likelihood that a mental health professional will likely recommend that any such initial meeting(s) be followed up with therapy.  Realistically, providing adequate therapy to in-custody Plaintiffs is likely to be impossible.

1         In light of all of this, and more (including many potential unknown-unknowns),

2   counsel for the three Plaintiffs will ask any mental health professional that he may

3   request to meet with an in-custody client to be cautious, and to curtail, limit, or stop

4   a meeting or examination if it risks raising issues that would require follow-up

5   therapy that cannot be provided to that in-custody Plaintiff.

6         As counsel for the three Plaintiffs explained to Ms. Hoar and Ms. Vogel, these

7   circumstances alone preclude him from agreeing to the government's proposal that

8   the Court order that defense experts may examine in-custody Plaintiffs at this stage.

9   Among other concerns, if the issues mentioned above arise as a result of Plaintiff's

10   meeting with a mental health professional retained by Plaintiff's counsel, sending in

11   a defense expert to examine that Plaintiff shortly thereafter is likely to make a bad

12   situation worse.

13   **III.   Reasons For Objecting To Defendant's Proposed Order**

14         The three Plaintiffs object to the Defendant's proposed order – most important

15   their request that the Court order that defense experts may examine in-custody

16   Plaintiffs at this stage – for the following reasons.

17         First, there are the practical reasons set out above.  Without reiterating those,

18   it is simply too early in this case for undersigned counsel to decide how he is going

19   to proceed with respect to mental health professionals, much less to agree to what the

20   Defendant proposes.

21         Second, one of the two arguments that AUSAs Hoar and Vogel made to

22   undersigned counsel in this regard is that their mental health professionals are entitled

23   to examine the Plaintiffs under Federal Rule of Civil Procedure 35.  Rule 35 is a

24   discovery rule and states, in relevant part:

25           (1) In General.  The court where the action is pending may order a party
    whose mental or physical condition – including blood group – is in
26   controversy to submit to a physical or mental examination by a suitably
    licensed or certified examiner.  The court has the same authority to order
27   a party to produce for examination a person who is in its custody or
    under its legal control.

28

8

1   (2) Motion and Notice; Contents of the Order.  The order:

2       (A) may be made only on motion for good cause and on notice to
3       all parties and the person to be examined; and

4       (B) must specify the time, place, manner, conditions, and scope
        of the examination, as well as the person or persons who will
5       perform it.

6   There are several reasons why defense counsel's reliance on this rule is misplaced.

7       To begin with, it is a discovery rule, and discovery has not begun in any of the

8   related cases – the Defendants haven't even filed answers.

9       Furthermore, Rule 35 is arguably the most strict discovery rule.  Indeed, in

10  *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), the Supreme Court noted that, unlike

11  rules pertaining to other kinds of discovery, Rule 35 contains a "restriction" that the

12  matter be "in controversy," and also requires that the party seeking to compel the

13  examination demonstrate "good cause."  *Id.* at 117.  The Court went on to say that the

14  "in controversy" and "good cause" requirements of Rule 35 "are not met by mere

15  conclusory allegations of the pleadings – nor by mere relevance to the case – but

16  require an affirmative showing by the movant that each condition as to which the

17  examination is sought is really and genuinely in controversy and that good cause

18  exists for ordering *each particular examination*."  *Id.* at 118 (emphasis added).  The

19  Court concluded by saying:

20      Rule 35, therefore, requires discriminating application by the trial judge,
        who must decide, as an initial matter in every case, whether the party
21      requesting a mental or physical examination or examinations has
        adequately demonstrated the existence of the Rule's requirements of "in
22      controversy" and "good cause," which requirements . . . are necessarily
        related.
23

24  *Id.* at 118-19.

25      The government hasn't filed a motion to compel an examination in any case,

26  much less made the requisite showings for granting such a motion.  In this regard, it

27  bears noting that the fact that a Plaintiff seeks damages for emotional distress does

28  not alone warrant granting a Rule 35 motion.  *See id.* at 118 (stating that "good cause"

9

requirements of Rule 35 "are not met by mere conclusory allegations of the pleadings"); *see also Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995) ("[a] number of courts have specifically held that a claim of emotional distress, without more, is not sufficient to place plaintiff's mental condition in controversy"). Moreover, it is impossible for the government to show that it will one day succeed in meeting Rule 35's requirements, and therefore the Court should jump past the Rule's explicit requirements, much less that it will make that showing with respect to any specific Plaintiff. Any such motion will depend on case-specific facts, none of which are before the Court at this time. Furthermore, any litigation on that issue may be affected by things such as amendments to complaints, the outcome of motions to dismiss, what is stated in answers, what is learned in discovery, *et cetera*. In short, now is not the time to litigate Rule 35 motions, much less guess what might happen later in a particular case, because discovery is stayed and the issues aren't anywhere close to ripe.[1]

Finally, there are several logistical (*i.e.*, time, place, manner, examiner) issues that have to be resolved in Rule 35 litigation, none of which have been presented to the Court, much less presented with a record that allows for adequate resolution.

The other argument in support of the Defendant's position made by AUSAs Hoar and Vogel is, effectively, "we are agreeing to your mental health professionals being given access to your clients in exchange for our mental heath professionals being allowed to examine your clients at this pre-discovery stage." A major flaw in this argument is evident when one considers that the government cannot compel

---

[1]  It bears noting here that if one of the three Plaintiffs chooses to use at trial, and thereby notices in discovery, a mental health professional, that Plaintiff will almost certainly agree, without need for Rule 35 litigation, that a corresponding defense expert may have reasonable access to that Plaintiff to conduct an examination. That is the reciprocal discovery obligation that undersigned counsel acknowledged during the December 11, 2023, case management conference.

examinations of out-of-custody Plaintiffs at this point.  Those Plaintiffs may meet with mental health professionals as much as they want, without triggering any pre-discovery examination right for the Defendant.  Trying to leverage the fact that a Plaintiff is in-custody to compel such access is especially offensive in these cases considering the nature of the torts involved.

In light of all of these concerns, the three Plaintiffs request that the Court reject the Defendant's proposed order.  As mentioned, they expect other Plaintiffs will likewise object.

On a final note, the controversy that Mr. Butland identified in his December 15, 2023 filing (regarding the Defendant's seeking to have in-custody Plaintiffs examined now and later) will be obviated if the Court rejects the Defendant's request that the Court order such examinations may be conducted now.  With such a ruling in place, there will be no examine-now-and-later issue to resolve.  Instead, the Defendants may seek such examinations later, as dictated by, and consistent with, the Federal Rules of Civil Procedure.

Respectfully Submitted,

Date:  December 16, 2023          */s/ Todd W. Burns*
TODD W. BURNS
Attorney for Plaintiffs R.C., J.R., and M.J.R.